UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BLANCHE TUCKER,** | : | |
| *Plaintiff*, | : | **Civil Case Number** |
| | : | |
| **v.** | : | **3:14-cv-01621 (VLB)** |
| | : | |
| **UNITED STATES OF AMERICA** | : | **February 3, 2017** |
| *Defendant.* | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 30]

## INTRODUCTION

Plaintiff, Blanche Tucker ("Plaintiff" or "Tucker"), brings this negligence suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, for a slip-and-fall that occurred in a United States Post Office in West Haven, Connecticut.  Before the Court is Defendant's Motion for Summary Judgment.  For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

On August 23, 2013, Tucker took the day off from work and went to the Allingtown Post Office in West Haven, Connecticut to buy stamps or get a money order.  [Dkt. 30-1 (Def.'s Mot. Summ. J. Local Rule 56(a)(1) Statement), ¶¶ 1-2; Dkt. 33-2 (Pl.'s Opp'n Mot. Summ. J. Local Rule 56(a)(2) Statement), ¶¶ 1-2; Dkt. 30-2 (Pl.'s Dep.) at 25:21-22].  When she entered the premises, she spotted her friend

from church, Delores McQueen ("McQueen"), who worked at the Post Office as a Postal Clerk. [Dkt. 30-1, ¶ 3; Dkt. 33-2, ¶ 3]. The people in the Post Office were abuzz with excitement over a "huge" bug that was annoying the customers. [*See* Dkt. 30-3 (McQueen Dep.), at 22:11-25 ("It looked like a bee as big as our heads. It was huge."); Dkt. 30-1, ¶ 4; Dkt. 33-2, ¶ 4]. Tucker alleges that McQueen asked her to spray the bug, although McQueen does not recall doing so. [*See* Dkt. 30-1, ¶ 5; Dkt. 33-2, ¶ 5; Dkt. 33-5 (McQueen Dep.), at 23:21-22]. Tucker obtained a spray bottle containing unknown liquid, sprayed the bug, and attempted to step on the bug when it came closer to the ground. [Dkt. 30-1, ¶¶ 5-10; Dkt. 33-2, ¶¶ 5-10]. In the process of stepping on the bug, Tucker slipped and fell on the ground. [Dkt. 30-1, ¶ 11; Dkt. 33-2, ¶ 11].

Tucker did not notice any wet spots on the floor prior to stepping on the bug. [Dkt. 30-1, ¶ 12; Dkt. 33-2, ¶ 12]. Tucker testified that the area of the floor with which she came into contact when stomping on the bug was in fact dry. [Dkt. 30-1, ¶ 13; Dkt. 33-2, ¶ 13]. After getting up, Tucker did not notice any other wet spots. [Dkt. 30-1, ¶ 16; Dkt. 33-2, ¶ 16]. McQueen had not asked Tucker to step on the bug. [Dkt. 30-1, ¶ 17; Dkt. 33-2, ¶ 17]. Kevin Love ("Love"), the custodian, indicated there was a "liquidy" spot about "[t]he size of a soccer ball" that he was to mop during the time when Tucker was present, but it is unclear when the substance on the floor came to exist. [*See* Dkt. 30-4 (Love Dep.) at 38:1-16]. Three days later, Tucker received an x-ray and treatment to her leg. [*See* Dkt. 30-2, at 41:2-25].

2

On May 7, 2014, Tucker filed a claim for administrative settlement with the United States Postal Services in the amount of $450,000, which the United States Postal Service Tort Claims Examiner/Adjudicator denied on September 18, 2014. [Dkt. 18-1 (Standard Form 95 Claim for Damage, Injury, or Death); Dkt. 18-2 (Administrative Letter)].  As required under 28 U.S.C. § 2401(b), Tucker has filed an administrative claim with the appropriate federal agency within two years of the time the claim accrued and filed this action within six months of the date mailing of the notice of final denial of her claim, thereby conferring jurisdiction upon this Court.

## ANALYSIS

### I.   Legal Standard

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  Where, as here, "a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."  *Vt. Teddy Bear Co.*

*v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'"  *Id.* at 244 (emphasis omitted) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed. R. Civ. P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried."  *Gottlieb v. Cty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).  A plaintiff may not rely solely on "the allegations of the pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion for summary judgment are not credible.  *Id.* (internal citations omitted).  "At the summary judgment stage of the proceeding, [a plaintiff is] required to present admissible evidence in support of her allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No. 3:03CV481 (MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).

## II.   FTCA Negligence Claim

Under 28 U.S.C. § 1346(b), the United States is liable for its employee's torts "in accordance with the law of the place where the act or omission occurred."   28

U.S.C. § 1346(b)(1); *see Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984); *Davis v. United States*, 430 F. Supp. 2d 67, 73 (D. Conn. 2006) ("The Supreme Court has, on numerous occasions, read the FTCA to mean that the United State's [sic] liability is determined by state substantive tort law."). Connecticut law applies to Tucker's claims because it would have applied if Tucker had brought a negligence action against a private defendant.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Baptiste v. Better Val-U Supermarket, Inc.*, 262 Conn. 135, 138 (Conn. 2002) (internal quotation marks and citations omitted). The existence of a duty is a question of law. *Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 171 (Conn. 1988); *Dubuis v. U.S.*, 3:06CV01443(DJS), 2008 WL 410429, at *4 (D. Conn. Feb. 12, 2008). "Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." *Gordon*, 208 Conn. at 171. The status of a person entering onto a possessor's land determines the duty owed by the possessor to such person: thus, an ascending degree of duty is owed to a trespasser, a licensee, and an invitee. *Considine v. City of Waterbury*, 279 Conn. 830, 859 (Conn. 2006). Tucker, who was a regular patron of the Allingtown Post Office, was a business invitee on that day because she went to buy stamps or get a money order, both of which were offered for sale at the Post Office at the time of her visit. [Dkt. 30-2, at 25:21-22]; *see Corcoran v. Jacovino*, 161 Conn. 462, 465 (Conn. 1971) ("A business invitee 'is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the

possessor of the land.'") (quoting Restatement (Second) of Torts § 332 (Am. Law Inst. 1965)); *Gomes v. United States*, No. 3:11-CV-01825, 2012 WL 5869801, at *4 (D. Conn. Nov. 19, 2012) (where the parties did not dispute plaintiff was a "business invitee" of the United States Post Office because he maintained a post office box and was a regular customer of the Norwich Post Office).  As a business invitee, Defendant owed Plaintiff a "duty to maintain its premises in a reasonably safe condition."  *Gomes*, 2012 WL 5868901, at *4; *Martin v. Stop & Shop Cos., Inc.*, 70 Conn. App. 250, 251 (Conn. Appt. Ct. 2002).

A defendant has breached the duty to a business invitee if "the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice. . . ."  *Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 776 (Conn. 2007).  Whether actual or constructive, the notice "must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . ."  *Id.*; *James v. Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 179 (Conn. App. Ct. 2010) ("the plaintiff [is] required to prove that the defendant had had actual or constructive notice of the *specific defect* that caused the plaintiff's injuries.") (quoting *Riccio v. Harbour Village Condo. Ass'n., Inc.*, 281 Conn. 160, 164 (Conn. 2007)); *Graham v. Kohl's Dep't Stores, Inc.*, No. 3:04CV949(MRK), 2005 WL 2256603, at *1 (D. Conn. Sept. 8, 2005) ("[R]elevant case law in Connecticut places a heavy burden on a 'slip and fall' plaintiff to demonstrate that a defendant had actual or constructive notice of the specific defect that led to the accident and 'not merely of conditions naturally productive of that defect even though subsequently in fact

6

producing it.'") (citing *LaFaive v. DiLoreto*, 2 Conn. App. 58, 60 (Conn. App. Ct. 1984)).  Proof of notice is not necessary if "the defendant's conduct created the unsafe condition" because "it safely may be inferred that it had knowledge thereof."  *Kelly*, 281 Conn. at 777.

Plaintiff does not argue that Defendant had actual or constructive notice, but if she had done so these arguments would be unavailing.  No evidence has been submitted to indicate that anyone was aware of a puddle existing prior to Plaintiff's fall, and therefore Defendant did not have actual notice of an unsafe condition.[1] With respect to constructive notice, "[t]he controlling question in deciding whether the defendant[ ] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it."  *Kelly*, 281 Conn. at 777; *Gomes*, 2012 WL 5869801, at *7 (same).  Such a determination is based on the particular circumstances of the case.  *Kelly*, 281 Conn. at 777.  Here, the evidence is that there was no puddle at all.  Tucker herself testifies that she did not notice any liquid substance on the ground before or after she fell.  [Dkt. 30-2, at 33:12-14, 73:5-9].  Neither McQueen, who was on the other side of the service counter, nor any other affiant has offered evidence that there was liquid on the floor immediately prior to Tucker's fall.  In fact, when asked what Tucker slipped on, she

---

[1] Love refers to something "liquidy" that was "the size of a soccer ball," but it is unclear at what point this substance came to exist on the floor.  [Dkt. 30-4, at 38:1-14].  It is entirely possible that this liquid appeared after Plaintiff's fall, as the Court can imagine a situation in which Plaintiff fell, dropped the bottle, and the liquid poured out as a result.

testified, "I don't know," and she admitted that the ground was dry where her foot came into contact.  [*Id.* at 33:6-20].  The record indicates that Plaintiff's slip and fall is not attributable to the liquid on the floor, but even it were the case, the liquid certainly could not have existed on the floor for a time long enough for a Postal Service employee exercising reasonable care to clean it up.

While foregoing the notice argument, Plaintiff instead posits that Defendant created the unsafe condition when the employee asked Plaintiff to spray the liquid at the bug without telling the Plaintiff that "the contents of the spray bottle . . . would likely cause the floor to become slippery."   [Dkt. 33-1 (Pl.'s Opp'n Mot. Summ. J.), at 7].  Tucker testified that she was affirmatively asked by McQueen to spray the bug, although McQueen could not corroborate this allegation.  [Dkt. 30-2, at 31:7-9; Dkt. 30-1, ¶ 3; Dkt. 33-2, ¶ 3; Dkt. 33-5, at 23:21-22].  Assuming McQueen had asked Tucker to spray the bug and assuming such a request is a breach of duty, such an action alone does not make Tucker's injuries reasonably foreseeable. Connecticut law requires that after proving a defendant is in breach of duty the plaintiff then must establish (a) "the injury would not have occurred but for the actor's conduct," and (b) "the defendant's conduct [was] a substantial factor in bringing about the plaintiff's injuries and that there was an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendant's conduct]."  *Rawls v. Progressive N. Ins. Co.*, 310 Conn. 768, 776-77 (Conn. 2014).  Simply stating that McQueen breached a duty by asking Tucker to spray the bug is not enough.  No defendant could reasonably foresee that by virtue of possessing a spray bottle Tucker would either (a) spray so much of the contents onto the floor to create a

8

slip-worthy puddle, or (b) attempt to step on a bug that is actively flying through the air to squash and kill it. The Court finds as a matter of law that no reasonable jury could determine that McQueen's alleged request to spray a bug was a substantial factor in causing Tucker to slip, fall, and sustain an actual injury.  *See, e.g., Demers v. Rosa*, 102 Conn. App. 497, 506 (Conn. App. Ct. 2007) (finding that the defendant's negligent act in allowing the dog to roam free on the day in question did not proximately cause plaintiff to slip and fall, as the dog had already been put in the car and plaintiff slipped on ice and snow in the driveway); *Ellison v. St. Raphael Dialysis Ctr. P'ship*, No. NNHCV146049509, 2015 WL 4098173, at *2 (Conn. Super. Ct. June 3, 2015) (granting summary judgment because defendant's failure to warn of a wet floor proximately caused plaintiff's fall but did not proximately cause an actual injury). Therefore, the Court finds that Defendant did not breach its duty of care to maintain its premises in a reasonably safe condition.

III.   **Conclusion**

   The Court GRANTS Defendant's Motion for Summary Judgment and enters judgment in Defendant's favor.   The Clerk is directed to close this case.

IT IS SO ORDERED.

                                                    _____/s/_____
                                                    Vanessa L. Bryant
                                                    United States District Judge

Dated at Hartford, Connecticut: February 3, 2017